IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| EDWIN L. COCKRELL, SR., et al. | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) Case No. 21-cv-907-DWD |
| ST. CLAIR COUNTY, | ) |
| THOMAS HOLBROOK, and | ) |
| MARK A. KERN, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MEMORANDUM & ORDER

**DUGAN, District Judge:**

Plaintiffs challenge the constitutionality of the apportionment of county board districts in St. Clair County, Illinois. On August 11, 2021, they filed suit pursuant to 42 U.S.C. § 1983 and the Declaratory Judgment Act, 28 U.S.C. § 2201, alleging that the redistricting plan violates 55 ILCS, 5/2-3003, *et seq.*, and the Fourteenth Amendment's Equal Protection Clause. On September 3, 2021, Plaintiffs filed their Amended Complaint (Doc. 12) alleging largely the same claims. On September 9, 2021, the Plaintiffs filed their First Amended Complaint again alleging for the most part the same claims. Then on September 23, 2021, Plaintiffs Cockrell and Mathews filed their Motion to Expedite in which they ask that this matter be concluded no later than December 10, 2021. (Doc. 22). On the same day, Defendants filed their Motion to Dismiss the First Amended Complaint. (Doc. 23). In their motion, Defendants assert generally that the Plaintiffs lack standing and that they have failed to state a claim. But before the Court had the opportunity to

1

address that Motion the Plaintiffs filed their Third Amended Complaint adding a number of plaintiffs and alleging "new factual developments" in that on November 12, 2021, the St. Clair County Board was convened and a new County Board District Map, using the U.S. Census data, was approved by ordinance. There, the Plaintiffs assert largely the same claims as alleged before except to add allegations that the County failed to provide adequate notice of the hearing on the changes thereby violating state law and its own County Code. (Doc. 42). During a remote hearing that took place on December 13, 2021, Plaintiffs made the oral motion for leave to amend their complaint which the Court granted. [1] On December 14, 2021, the Plaintiffs motioned for leave to again amend their Complaint alleging that the "legal theories, arguments, complaints raised in this proposed Fourth Amended Complaint are almost identical to those mentioned in the Third Amended Complaint" and that the "proposed changes only clarify issues raised by Plaintiffs, and are sought to be plead now that the Plaintiffs have had ample time to analyze the new map." (Doc. 49) That motion also asserts that the "filing of this Fourth Amended Complain will not affect the newly proposed schedule as suggested by the Court." *Id*. The Court denied as moot the Plaintiff's motion. (Doc. 48; Doc. 54) On December 20, the Defendants filed their Motion to Dismiss, again asserting that the Plaintiffs lack standing and that they have failed to state a claim. (Doc. 20). The Plaintiffs

---

[1] On December 14, 2021, the Plaintiffs filed a formal motion to their oral motion to amend their complaint alleging that the "legal theories, arguments, complaints raised in this proposed Fourth Amended Complaint are almost identical to those mentioned in the Third Amended Complaint" and that the "proposed changes only clarify issues raised by Plaintiffs, and are sought be plead now that the Plaintiffs have had ample time to analyze the new map." (Doc. 49) This motion was denied as moot. (Doc. 55)

2

filed their response (Doc. 22) to that motion and the Court took it up for oral argument on December 28, 2021.  The Court finds that the Defendants' Motion should be denied.

## Plaintiffs' Standing and Rule 12(b)(1)

Defendants argue in their Motion to Dismiss that the Plaintiffs lack standing to bring the federal §2 Voting Rights Act of 1965, 52 U.S.C. § 10301, *et. seq*, claim because they have not alleged a particular and concrete injury. Thus, the Defendants' attack is a facial challenge under Rule 12(b)(1).  See *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009) (Facial challenges require only that the court look to the complaint and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction.)

The Plaintiffs argue that they have alleged injury and point to ¶¶123 and 124 of the Fourth Amended Complaint ("Complaint") in support. Paragraph 123 provides that "the reduction of districts from 29 to 28 effectively eliminated a Majority-Minority District"[2] and that such a reduction "creates minority incumbent primaries and could have all been drawn in a way to avoid this violation" and thereby reduce "the impact of Minority Voters across St. Clair County". (Doc. 50, P. 44).  Paragraph 124 provides: "This violation causes minority vote dilution [and] additionally reduces the ability of [the] more the [*sic*] densely minority populated areas to elect a representative of their choice." *Id*. Further Plaintiffs point to ¶¶40, 41, 43 and 44 of their Complaint where they allege that three individuals, Terrilyn Gossett, Marvin Strode and Jason Madlock, live within

---

[2] "In majority-minority districts, a minority group composes a numerical, working majority of the voting-age population." *McConchie v. Scholz*, 21 -cv- 03091, Doc. 182, FN 2 (N.D. Ill., Dec. 30, 2021)  *Per curium*, Circuit Judge Michael B. Brennan, District Judge Jon E. DeGuilio, and District Judge Robert M. Dow, Jr. Citing *Bartlett v. Strickland*, 556 U.S. 1, 13 (2009)

3

districts of St. Clair County that were changed by the redistricting plan by an unnecessary division of communities in violation of Illinois law. (Doc. 50 pp. 14-15). In their Response to Defendant's Motion to Dismiss, the Plaintiffs argue that "these districts are all affected by the white Democrat political agenda of the Defendants" and that the named individuals "were affected by the arbitrariness of the racial gerrymandering done by the defendants". (Doc. 56)

It is well settled that "the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of…. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *United States v. Hays*, 515 U.S. 737, 742–43, 115 S. Ct. 2431, 2435, 132 L. Ed. 2d 635 (1995) citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Id*. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we "presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Id*. However, "it follows that the *Twombly–Iqbal* facial plausibility requirement for pleading a claim is incorporated into the standard for pleading subject matter jurisdiction." *Silha v. ACT, Inc.*, 807 F.3d 169, 174 (7th Cir. 2015) "[W]hen evaluating a facial challenge to subject matter jurisdiction under Rule 12(b)(1), a court should use *Twombly–Iqbal's*

4

"plausibility" requirement, which is the same standard used to evaluate facial challenges to claims under Rule 12(b)(6)." *Id.*

Plaintiffs assert that Districts 4, 5 and 6 are affected by "racial gerrymandering done by the Defendants". (Doc 56, P. 2) The Plaintiffs Terrilyn Gossett, Marvin Strode and Jason Madlock are alleged in the Fourth Amended Complaint to reside respectively in those districts. Such factual allegations are sufficient to establish standing. *Shaw v. Hunt*, 517 U.S. 899, 904, 116 S. Ct. 1894, 1900, 135 L. Ed. 2d 207 (1996) ("a plaintiff who resides in a district which is the subject of a racial-gerrymander claim has standing to challenge the legislation which created that district but that a plaintiff from outside that district lacks standing absent specific evidence that he personally has been subjected to a racial classification.") The remaining Plaintiffs are not alleged to be residents of the racially gerrymandered districts nor are they alleged to have been assigned to their voting districts on account of their race. Therefore, only Plaintiffs Gossett, Strode and Madlock have standing as to the racial gerrymandering claims.

### Plaintiffs' Voting Rights Act and 14th Amendment Claims

Defendants also move to Dismiss under Rule 12(b)(6) Plaintiffs' Voting Rights Act violation claims in Count VI of the Fourth Amended Complaint (Doc 53, p.12) and Equal Protection Clause violation claims in Count III (Doc. 53, p. 16). Defendants claim that in each instance, the Plaintiffs have failed to state a claim for which relief is available. To survive a motion to dismiss brought pursuant to Rule 12(b)(6), a complaint must include enough factual content to give the opposing party notice of what the claim is and the

grounds upon which it rests. See *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 698 (2009). To satisfy the notice-pleading standard of Rule 8, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief" in a manner that provides the defendant with "fair notice" of the claim and its basis. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)(citing *Twombly*, 550 U.S. at 555 and quoting FED. R. CIV. PROC. 8(a)(2)). In ruling on a motion to dismiss for failure to state a claim, a court must "examine whether the allegations in the complaint state a 'plausible' claim for relief." *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011)(citing Iqbal, 556 U.S. at 677-678).

Defendants argue that the Plaintiffs Complaint in Counts III and VI put forth "inaccurate allegations of differing populations" (Doc. 52, FN3). Defendants also argue that Plaintiffs fail to address or provide factual support in Count VI of their Fourth Amended Complaint the *Gingles* factors[3] and that the Plaintiffs' "own proposed map" belies a voter dilution claim because it also envisions a reduction in the number of majority-minority districts from 6 to 5. (Doc. 52, p. 14). However, as noted, Rule 8, with its "short and plain statement" requirement, does not demand the level of factually detailed pleading as Defendants here suggest. Further, when considering a motion to dismiss under 12(b)(6), the court is required to "accept all well-pleaded facts as true and

---

[3] The discriminatory results of a particular election districting plan normally require proof of a conjunction of the following three circumstances: (1) the minority group must be sufficiently large and geographically compact to constitute a majority in a single-member district; (2) the minority group must be politically cohesive; and (3) the majority usually must vote sufficiently as a bloc to enable it to defeat the minority's preferred candidate, in the absence of special circumstances such as the absence of an opponent or incumbency. *Thornburg v. Gingles*, 478 U.S. 30, 50, 106 S. Ct. 2752, 2766, 92 L. Ed. 2d 25 (1986)

draw all reasonable inferences in the plaintiff's favor." *White v. United Airlines, Inc.*, 987 F.3d 616, 620 (7th Cir. 2021) Thus, under Rule 12(b)(6), neither the resolution of disputed facts nor the consideration of the relative accuracy or evidentiary weight of those facts as alleged in the complaint is proper at this stage of the proceedings.

Although Count VI of the Plaintiffs' Complaint does not refer to the specific section of the Voting Rights Act, the nature of the claims, together with arguments of counsel, suggests that 52 USCA §10301 is the basis on which Plaintiffs make their claims. Subsection (a) is straight forward as it says that governments cannot adopt standards, practices, or procedures that "result[ ] in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color". See *Gonzalez v. City of Aurora, Illinois*, 535 F.3d 594, 597 (7th Cir. 2008). Subsection (b) then illuminates subsection (a):

> (b) A violation of subsection (a) is established if, based on the totality of circumstances, it is shown that the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of a class of citizens protected by subsection (a) in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice. The extent to which members of a protected class have been elected to office in the State or political subdivision is one circumstance which may be considered: Provided, that nothing in this section establishes a right to have members of a protected class elected in numbers equal to their proportion in the population.
> West 52 USCA §10301

The Plaintiffs Complaint alleges in ¶¶ 19-27 a variety of facts that they believe supports their claims of violations of the Voting Rights Act. They allege that racial

inequities and consequences are a result of the adoption of the New Map, including that it eliminates a district that was populated predominately by minority members when this anomaly could have been easily avoided by redrawing the map along the western boundary. See *Gonzalez v. City of Aurora, Illinois*, 535 F.3d 594, 598 (7th Cir. 2008) ("A problem under § 2 arises whenever any person is moved from one district to another to minimize the value of his vote and give an advantage to someone else.") This, they allege, propagates the further consequence of incumbent primaries occurring in *only* the majority-minority districts. No districts populated predominately by whites suffer a similar change according to Plaintiffs. As a result, only 3 of the 5 minority incumbent board members can be re-elected. Taking as true the allegations in the Complaint, and drawing all reasonable inferences in the Plaintiffs' favor, the Court finds that they are adequate to state a claim for violation of the Voting Rights Act.

Turning to Count III and the claims of violation of the Equal Protection Clause of the Fourteenth Amendment, that amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., Amdt. 14, § 1. Its central mandate is racial neutrality in governmental decision-making including decisions to redistrict a political subdivision for voting purposes. See *Miller v. Johnson*, 515 U.S. 900, 904, 115 S. Ct. 2475, 2482, 132 L. Ed. 2d 762 (1995) Where the claim is one based upon the Equal Protection Clause of the 14th Amendment, Plaintiffs must show that "race was the predominant factor motivating the legislature's decision to place a significant number of voters within or without a particular district." *Alabama Legislative Black Caucus v. Alabama*, 575 U.S. 254, 263, 135 S. Ct. 1257, 1265, 191 L. Ed. 2d 314 (2015)

Plaintiffs here allege that Defendants "capriciously apportioned the county to protect the white democrat incumbents as was their goal." (Doc. 50, ¶ 27). These allegations, coupled with the others contained in the Complaint provide, however thinly, adequate notice of the nature of the claim sufficient for the formulation of a response. *See* Fed. R. Civ. Pro., Rule 8. Nothing more is required at this stage of the proceedings. Accordingly, the allegations set forth in the Plaintiffs' Fourth Amended Complaint nudge their pleading across that line that separates "plausible" and "merely conceivable" and, therefore, adequately state a claim for violation of the Equal Protection Clause.

### Plaintiffs' State Law Claims

Plaintiffs also allege violations of State and local laws. In Count I, Plaintiffs assert that the Defendants violated 55 ILCS 5/2-3003 in that the districts as drawn in the New Map are not compact, do not follow natural boundaries and are not all contiguous and divide townships. (Doc. 50, p. 36). In Count II, Plaintiffs allege that 55 ILCS 5/2-3003(3) was violated when the County "did not allow meaningful time for public hearing to contribute questions or comments". (Doc. 50, p. 38). In Count IV, Plaintiffs allege that 55 ILCS 5-2/3001, 3002 and 3004 were violated when the Defendants did not "first have duly posted, noticed hearing on a separate ordinance to discuss the number of county board districts St. Clair County would have." (Doc. 50, p. 40). In Count V, Plaintiffs allege that the Defendants violated the Administration section of the St. Clair County Code in that the Judiciary Committee did not receive proper notice of the ordinances adopting the New Map and repealing the old map. (Doc. 50, pp. 42-43). In Count VII, the Plaintiffs

9

allege the last of their state law claims by asserting that the reduction in districts and the creation of minority incumbencies causes a vote dilution in violation of the Illinois Voting Rights Act.

First, the Defendant seeks dismissal of Counts I, II, IV, V and VII of the Complaint under Rule 12(b)(1) and argue that this Court "is barred from exercising supplemental jurisdiction over state-law claims related to apportionment without an established violation of federal law." (Doc. 53, p. 21). However, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C.A. § 1367(a) (West). Defendants do not argue that this Court lacks jurisdiction over the claims for violations of the Voting Rights Act, the Declaratory Judgment Act or Equal Protection Clause. *See* 28 USCA §1331  (district courts have original jurisdiction of all civil actions under the Constitution and laws of the United States)  Defendants suggest that the Supreme Court's pronouncement in *Voinovich v. Quilter*, 507 U.S. 146, 156, 113 S. Ct. 1149, 1156, 122 L. Ed. 2d 500 (1993) that "[f]ederal courts are barred from intervening in state apportionment in the absence of a violation of federal law" this Court cannot consider the Plaintiffs' state law claims. It is true that "legislative reapportionment is primarily a matter for legislative consideration and determination" and that "reapportionment is primarily the duty and responsibility of the State through its legislature or other body, rather than of a federal court" but it is also true that "the federal courts are bound to respect the States' apportionment choices *unless*

*those choices contravene federal requirements.*" *Id* at 156 (*emphasis added*). Here, the Plaintiffs have alleged violations of federal law and have not yet "established a violation federal law". Should Plaintiffs establish a violation of federal law as alleged, this Court's supplemental jurisdiction will allow it to consider any of state law claims that are so related to the federal law claims that they form part of the same case or controversy under Article III of the United States Constitution. *See* 28 USCA § 1367(a).

Next, Defendants argue that Counts I, II, IV, V and VII of the Complaint do not state a claim upon which relief can be granted. As to Count I, Defendants argue that the "Plaintiffs' objections to division of the precincts is disingenuous" and that defendants have fully complied with applicable Illinois law. As to Count II and IV, Defendants contend that they have "fully complied" with 55 ILCS 5/2-3003(3) and 2-3003(1) respectively and that those Counts should be dismissed. However, while considering a 12(b)(6) motion this Court must take as true all of Plaintiffs' well pled facts and then determine whether those facts plausibly give rise to an entitlement to relief. *Iqbal* at 683. It would be inappropriate for this Court at the pleading stage to undertake resolution of disputed facts and issues when such matters are to be left to consideration following trial or, if undisputed, resolved on motions for summary judgment. See *Swierkiewicz v Sorema N.A.* 534 U.S. 506, 512 (2002)

## Conclusion

For the foregoing reasons, the Defendants' Motion to Dismiss (Doc. 53) should be denied. However, the Court wishes to be clear, that although it will deny the Defendants'

11

Motion to Dismiss, the denial means only that the Plaintiffs have said enough in their Complaint to satisfy Rule 8(a)(2) which requires a plaintiff plead "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Pro. 8(a)(2). Whether the Plaintiffs are entitled to the relief sought will depend on the evidence that is presented to the Court. As guidance in this regard, a review of the recently decided matter of *McConchie v. Scholz*, 21 -cv- 03091, Doc. 182, FN 2 (*Per Curium*, N.D. Ill., Dec. 30, 2021) (Circuit Judge Michael B. Brennan, District Judge Jon E. DeGuilio, and District Judge Robert M. Dow, Jr. presiding) might prove to be helpful to counsel.

The Court is aware of the apparent need for expedited scheduling in this matter. Accordingly, for the Status Conference presently scheduled for January 4, 2022, Counsel should be prepared to discuss status of discovery, discovery deadlines, dispositive motion deadlines and trial dates.

## Disposition

Defendants' Motion to Dismiss (Doc. 53) is hereby DENIED.

**SO ORDERED.**

Dated: January 1, 2022

_____
DAVID W. DUGAN
United States District Judge